IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DEBBIE J. SHERMAN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. CV-07-BE-0015-M |
| | ) |
| **MICHAEL J. ASTRUE** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Debbie J. Sherman, filed applications for Disability Insurance benefits and Supplemental Security Income payments on October 21, 2003, alleging disability commencing on August 18, 2001 due to asthma, back problems, a reconstructed hip, poor eyesight and hearing, and a hernia. The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge. The ALJ held a hearing on October 3, 2005. In a decision dated November 7, 2005, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income Payments. On November 3, 2006, the Appeals Council denied the claimant's request for review. The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)A), a person is entitled to disability benefits when the person cannot

>engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

>(1) Is the person presently unemployed?
>(2) Is the person's impairment severe?
>(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings."  *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III.  Facts

The claimant was forty-six years old at the time of the administrative hearing and has a tenth grade education.  (R. 10).  Her past work experience includes employment as a waitress, a packager of small parts, a meat wrapper, a hotel housekeeper, a dishwasher, a compact disc packer/assembler, a cook, an auto salesperson, and a florist. (R. 10-11).  According to the claimant, she became disabled on April 18, 2001[1] due to asthma, back problems, a reconstructed hip, poor sight and hearing, and a hernia.  (R. 49).  Since that date, the claimant has worked as a dishwasher, housekeeper, and cook but her earnings for those jobs were below the minimum amount required to constitute substantial gainful activity. (R. 11).

The claimant testified she fractured her right hip and hurt her lower back in a car collision

---

[1] At the hearing on October 21, 2005, the claimant amended the onset date to January 14, 2004. Despite that amendment, the ALJ's decision listed April 18, 2001 as the onset date. However, the court notes that the claimant did not perform any substantial gainful activity after either date.

3

in 1994 and experiences pain because of those injuries. (R. 296).  The claimant was diagnosed with asthma in 1998 and 1999. (R.113-19).  The claimant testified she bought a nebulizer in 1994, which she has been using four to five times a day since 2004. (R. 294).  Dr. Rommel Go examined the claimant on January 14, 2004. (R. 164).  He diagnosed the claimant with severe persistent asthma and chronic right hip pain. (R. 167). The claimant underwent consultative pulmonary function testing at the Center for Chest Disease on April 14, 2004. (R. 170).  The results of the test indicated that the claimant was 64.5 inches tall and had a post-bronchodilator forced expiratory volume over a one-second period of 1.58 and a forced vital capacity of 2.67. (R. 170). The claimant received a prescription for asthma medication at the Arab Clinic on August 13, 2004. (R. 202). Marshall Medical Center North admitted the claimant in March, May, and November of 2004 for complaints of foot pain, abdominal pain, and groin pain, respectively. (R. 203-39). She was hospitalized in May, 2004 and April, 2005 at Marshall Medical Center North for asthma-related conditions. (R. 204).

On September 25, 2005, Dr. Jack Zaremba examined the claimant and diagnosed her with asthma, degenerative disease, right inguinal hernia, left ovarian cyst, right ear hearing impairment, and right hip pain. (R. 263). Dr. Zaremba noted that the claimant reported smoking one half pack of cigarettes per day. (R. 262).  Dr. Zaremba also completed a Physical Capacities Evaluation ("PCE"), indicating that the claimant could lift ten pounds or less, could sit for no more than three hours per day, and could stand and walk no more than one hour per day. (R. 265).

The ALJ found that the medical evidence indicated that the claimant had status post fracture of the right femur in 1994, right hip pain status post surgery, back pain, and asthma. (R.

13).  The ALJ stated that these impairments were severe, but not severe enough to meet one of the impairments listed in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 12).  The ALJ stated that he was persuaded by the results of the pulmonary function test performed on April 14, 2004 that the claimant's breathing problems were not severe enough to meet the criteria for section 3.03 of Appendix 1, concerning asthma.  (R. 13).

The ALJ next assessed whether the claimant retained the residual functioning capacity ("RFC") to perform the requirements of her past relevant work. (R. 13).  The ALJ stated that he had given little weight to the report of Dr. Zaremba and listed three reasons for doing so. (R. 13). First, the ALJ stated that Dr. Zaremba's findings followed the claimant's complaints without any objective diagnostic imaging to support the allegations. (R. 13). Second, the ALJ stated that the medical evidence as a whole supported neither the claimant's reports of difficulty standing and walking, nor her reports of emergency room trips two to three times within a year. (R. 13). Finally, the ALJ stated that Dr. Zaremba examined the claimant on a solitary occasion. (R. 13).

Based on the medical examination performed by Dr. Go, the results of the April 14, 2004 pulmonary function test, and the claimant's testimony about her recent work history, the ALJ stated that the claimant retained the RFC to occasionally lift and carry up to twenty pounds and to frequently carry up to ten pounds. (R. 14).  The ALJ found that the claimant could stand, walk, and sit without limitation in an eight-hour day, but must be able to sit or stand at her option. (R. 14).  The ALJ found that the claimant was unable to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs on more than an occasional basis, and was unable to work at unprotected heights or around dangerous moving equipment, ladders, ropes, or scaffolds. (R. 14).  The ALJ stated that the claimant required jobs in a work environment free of dust, fumes, gases, with a

temperature and humidity controlled atmosphere that could be performed with moderate pain and its moderate effect on the ability to concentrate. (R. 14).

During the claimant's hearing, the ALJ posed a hypothetical situation to the vocational expert ("VE") based on his findings of the claimant's RFC.  The VE stated that, based on the RFC described by the ALJ, "the claimant could return to her past relevant work as a packager of small parts as previously performed and as generally performed in the national economy." (R. 307).

IV.  Issues Presented

In this appeal, the claimant argues that the Commissioner erred in two ways.  First, the claimant alleges that the ALJ failed to properly consider the medical evidence of record. Second, the claimant alleges that the ALJ failed to properly apply the Eleventh Circuit's three-part pain standard.

V. Discussion

**A. Consideration of the Medical Evidence of Record**

The law in this circuit is well established that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so.  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).  An ALJ's failure to give considerable weight to the treating physician's opinion is reversible error.  *Broughton*, 776 F.2d at 961.  However, the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion.  *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added). The Federal Regulations define a "treating physician" as one with which

the claimant has an "ongoing treatment relationship" or someone the claimant "sees or ha[s] seen with frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions." 20 C.F.R §404.1502.  While the ALJ must consider all medical opinions when making a disability determination, he does not have to accord an opinion arising out of a single consultative examination the special deference he must give to a treating physician's opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ properly discredited Dr. Zaremba's one-time consultative evaluation and clearly articulated his reasons for doing so.  The ALJ stated three reasons for giving Dr. Zaremba's opinion little weight.  First, the ALJ noted that Dr. Zaremba's findings followed the claimant's complaints without any objective diagnostic imaging to support the allegations. (R. 13).  Indeed, the record supports the ALJ's statement; it includes no mention of x-rays or other diagnostic imaging performed by Dr. Zaremba.  Second, the ALJ stated that the medical evidence as a whole supported neither the claimant's reports of difficulty standing and walking, nor her reports of emergency room trips two to three times within a year *because of asthma flare-ups*. (R. 13). In fact, the medical record contains only two *asthma-related* emergency room visits since the alleged onset date—one in May, 2004 and one in April, 2005. (R. 203-58).  The three other emergency room visits referenced in the record during this period are for foot pain, abdominal pain, and groin pain. (R. 203-58). Finally, the ALJ noted that Dr. Zaremba examined the claimant on a solitary occasion less than a year before the administrative hearing. (R. 13). The record supports this finding.  Because Dr. Zaremba only saw the claimant one time, he does not qualify as a "treating physician."  Since the medical evidence as a whole supports a conclusion that

contradicts Dr. Zaremba's opinion, the ALJ was not required to accord it substantial or considerable weight.

The ALJ properly considered the other medical evidence of record. The ALJ noted that Dr. Go's examination of the claimant showed that she had normal dexterity and grip strength, that she was able to heel, toe, and tandem walk and stoop and rise on her knees. (R.14). The ALJ also stated that he gave significant weight to the consultative pulmonary function testing performed on April 14, 2004. (R. 14). The ALJ properly considered all the medical evidence and found that Dr. Go's diagnosis and the pulmonary function testing results were consistent with the evidence as a whole. Therefore, substantial evidence supports the ALJ's decision to discredit Dr. Zaremba's testimony and to give greater weight to Dr. Go's assessment and the pulmonary function testing .

**B. Application of the Three-Part Pain Standard.**

A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective components. The pain standard requires (1) evidence of an underlying medical condition, and (2) *either*: (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ stated that evidence of an underlying medical condition—asthma, hip pain, and back pain—existed. (R.13). However, the ALJ stated that the medical evidence neither confirmed the severity of the claimant's alleged pain, nor could the claimant's medical condition be reasonably expected to give rise to the alleged pain. (R.13-14).

Under this pain standard, the ALJ must consider the testimony of the claimant, including her alleged limitations on daily activities that the impairment or combination of impairments causes. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). If the claimant seeks to establish a disability based on his or her own subjective complaints of pain, the ALJ's decision regarding the claimant's credibility becomes critical to his decision as to whether the claimant is "disabled." *Walden v. Schwiker*, 672 F.2d 835, 839 (11th Cir. 1982). Credibility determinations are reserved to the ALJ, subject to the requirement that in making these decisions, the ALJ clearly articulates his findings. *McGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1984).

The testimony of the claimant alone is not sufficient to support a finding of disability based on the claimant's subjective complaints of pain; the ALJ must consider other evidence, such as the medical records and the opinions of the treating or consultative physicians. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ must then articulate the reasons for accepting or rejecting this evidence and must state the weight given to the evidence. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Substantial evidence must support such articulation of reasons, or the ALJ must accept the pain testimony of the claimant as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Furthermore, the ALJ cannot reject a claimant's testimony based solely on his or her own observations or on criteria that objective medical evidence does not substantiate. *Johns v. Bowen*, 821 F.2d 551, 556-7 (11th Cir. 1987).

This court already concluded that the ALJ properly considered the medical evidence as a whole. *See* Part V.A., *supra*. This court also finds that the ALJ considered the claimant's subjective symptoms and properly rejected them as not credible. The ALJ reviewed the claimant's testimony about her daily activities to determine credibility. The claimant testified

that each day she feeds her chickens, cats and horse; she also brushes her horse, and works her on the ground. (R. 100). The claimant testified that these activities lasted around two hours each day. (R. 100).  Despite the fact that the claimant had not made the required earnings to constitute substantial gainful activity, she testified that she worked up to four hours a day, five days per week as a housekeeper at the Jameson Inn in 2005. (R. 292).  The ALJ properly determined that such activities were inconsistent with the disabling symptoms that the claimant alleged, such as an inability to stand and walk for more than an hour each day and disabling symptoms of asthma.

The ALJ's rationale for rejecting the claimant's subjective complaints of disabling pain provides the court with the requisite level of specificity to withstand any allegations of error. The ALJ is the sole determiner of credibility. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000) (*citing Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).[2]  Consequently, the court should not disturb a clearly-stated credibility finding unless substantial evidence does not support it.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  The ALJ's assessment of the claimant's credibility is clearly articulated and corroborated by substantial evidence in the record; therefore, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's testimony of disabling pain is not credible.

## V. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

---

[2]*See also, Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 11th day of April, 2008.

                                                        KARON OWEN BOWDRE
                                                        UNITED STATES DISTRICT JUDGE